# EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: MONITRONICS INTERNATIONAL, INC., TELEPHONE CONSUMER PROTECTION ACT LITIGATION | No. 1:13-md-02493-JPB-JES |
| THIS DOCUMENT RELATES TO:<br><br>    ALL CASES | |

**DECLARATION OF JONATHAN R. MARSHALL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

I, Jonathan R. Marshall, declare as follows:

1. I am the Court's appointed Plaintiffs' Liaison Counsel, and have been involved in this litigation since 2011. The matters stated in this declaration are within my personal knowledge.

2. I am submitting this declaration in support of the proposed settlement, to outline the work the Plaintiffs' team has performed to achieve the settlement, and to provide support for the proposed service award to the class representatives.

## My Qualifications

3. I received my B.A. from West Virginia University, *summa cum laude*, in 2003. I am a 2007 graduate, Order of the Coif, of the West Virginia University College of Law.

4. I have practiced with Bailey & Glasser since my 2007 graduation from law school. I have been a partner at the firm since January of 2014. I am a member of the bars of West Virginia (2007) and Illinois (2008).

5. I concentrate my practice in class and mass actions. I have served as class counsel in many cases, including:

- *Desai v. ADT Sec. Servs,* Civil Action No. 1:11-cv-1925 (N.D. Il.) ($15 million TCPA class settlement).

- *Mey v. Frontier Communications Corporation*, Civil Action No. 3:13-1191 (D. Conn) ($11 million TCPA class action settlement).

- *Mey v. Patriot Payment Group, LLC, et al.*, Civil Action no. 5:15-cv-00027 (N.D. W.Va.) ($3.7 million TCPA class action settlement).

- *Dijkstra v. Carenbauer,* Civil Action No. 5:11-cv-00152 (N.D. W. Va.) (court awarded class more than $2.6 million after granting affirmative summary judgment in mortgage loan case alleging violations of the West Virginia Consumer Credit and Protection Act).

- *Hardwick v. Rent-A-Center, Inc*., Civil Action No. 3:06-0901 (S.D. W. Va.) (class action settlement worth more than $5 million; alleging violations of state Consumer Goods Rental Protection Act).

- *Muhammad v. National City Mortgage Co.,* Civil Action No. 207-0423 (S.D. W. Va.) ($700,000 mortgage loan servicing settlement alleging violations of the West Virginia Consumer Credit and Protection Act).

- *Shonk v. SG Sales Co.,* Case No. 07-C-1800 (Circuit Court of Kanawha County, West Virginia) ($2.4 million nationwide settlement of class action brought under the Telephone Consumer Protection Act).

- *Triplett v. NationStar Mortgage, LLC,* Civil Action No. 3:11-cv-238 (S.D. W. Va.) (loan servicing case settled for $1.5 million).

- *Gillispie v. Rite Aid of West Virginia, Inc.*, Civil Action No. 11-C-1815 (Circuit Court of Kanawha County, West Virginia) (wage payment class settlement of $410,000).

- *Bauthauer v. Amazon.com, et al.*, Civil Action No. 12-C-111 (Circuit Court of Lincoln County, West Virginia) (wage payment class settlement).

- *Roberts v. Walgreen Co., et al.*, Civil Action No. 12-C-337 (Circuit Court of Mercer County, West Virginia) (wage payment class settlement).

- *Dunlap v. Wells Fargo*, Civil Action No. 04-C-101 (Circuit Court of Lincoln County, West Virginia) (consumer class action resulting in $9 million settlement, not including interest rate reductions and credit repair provided as part of the settlement).

- *Powers v. Santander Consumer USA, Inc*., Civil Action No. 12-cv-11932-TSH (D. Mass.) (consumer class action resulting in the establishment of a $750,000 settlement fund and 20 million in debt relief).

- *Glover v. Bank of America, N.A.*, Civil Action No. 13-40042-TSH (D. Mass.) (class action settlement for Massachusetts borrowers regarding late fees).

- *Pirillo v. PNC Mortgage Corporation*, Civil Action No. 11-C-751 (Circuit Court of Monongalia County, West Virginia) (consumer class action settlement).

- *Morris v. Merck Sharp & Dohme Corp.*, Civil Action No. 3:11-cv-00882 (S.D. W.Va.) (wage payment class action settlement totaling $750,000).

- *Deem v. Ames True Temper, Inc.*, Civil Action No. 6:10-cv-01339 (S.D. W.Va.) ($405,000 class action settlement in an ERISA action).

- *Dillon v. Chase*, Civil Action No. 03-C-164-W (Circuit Court of Hancock County, West Virginia) ($3.3 million-dollar consumer class action settlement).

- *Maureen DiLoretti, et al. v. Countrywide Home Loans, Inc., et al.*, Civil Action No. 5:14-cv-00076 (S.D. W.Va.) ($1,638,000 class action settlement for alleged abusive appraisals).

- *David and Theresa Palkovic, et al., Countrywide Home Loans, Inc.,* Civil Action No. 14-C-184 (Circuit Court of Ohio County, West Virginia) ($1 million class action settlement for unconscionable inducement class action).

- *Navelski v. International Paper Company*, Case No. 3:14-cv-445 (N.D. Fla.) (certified class on behalf of homeowners of 317 homes in a neighborhood alleged to be flooded by Defendant's dam breaking).

- *Shore v. JP Morgan Chase Bank, N.A., et al.*, Case No. 16-cv-60125 (S.D. Fla.) ($400,000 recovery for borrowers as a result of reinstatement quotes).

**Qualifications of Plaintiffs' Team**

6. Plaintiffs' counsel is comprised of an exceptional team of experienced class action and TCPA lawyers to pursue the claims in this case, all of whom strongly support the settlement as fair, adequate and reasonable. They include the following:

- **John Barrett, Co-Lead Counsel.** Mr. Barrett is my partner at Bailey & Glasser, where he heads the firm's contingent practice, which litigates consumer, investor, and employment class actions across the country, and has filled leadership roles in two of the largest MDL cases in history, the Toyota Unintended Acceleration litigation, and the

- 3 -

Volkswagen "Clean Diesel" litigation. Mr. Barrett has litigated class action cases for 15 years, and earlier this year was co-lead counsel in what may be the only TCPA class action successfully tried to a jury, *Krakauer v DISH Network, LLC* (M.D. N.C.). At trial, the jury concluded DISH was liable for 51,119 TCPA violations at $400 per violation, and the Court later trebled the award to $1,200 per violation, bringing the defendant's exposure to more than $61 million.

- **Beth Terrell, Co-Lead Counsel.** With the Seattle law firm Terrell Marshall Law Group PLLC, Ms. Terrell is one of the country's best-known and most successful TCPA class action attorneys. She has been appointed lead or co-lead counsel in many consumer fraud, civil rights, wage and hour, and TCPA class actions against companies including Wal-Mart, Microsoft, Best Buy, and Toyota. She has won some of the largest TCPA class action cases in history, including Capital One ($75 million), HSBC Bank Nevada ($39.9 million), and Chase Bank ($34 million). In this litigation, she was supported by a team of exceptional lawyers, including Jennifer R. Murray, Amanda Steiner, and Blythe Chandler.

- **Matthew McCue, Edward Broderick, and Anthony Paronich.** I have been fortunate to litigate TCPA class actions with these three Boston-area lawyers for ten years. They have pursued TCPA class actions almost exclusively since 2003, and have won substantial settlements in cases against Herbalife ($7 million), ADT Security Services ($15 million), AEP Energy, Inc. ($6 million), and Frontier Communications ($11 million), among many others.

7.      All of these lawyers contributed significantly to the prosecution and settlement of this case. All strongly support the settlement and believe it to be in the best interests of class members.

## Our Work on the Case

8.      I have worked on this matter since the 2011 filing of Plaintiff Diana Mey's original lawsuit against Monitronics and VMS that led to the establishment of these MDL proceedings ("*Mey I*"). I am very familiar with the discovery efforts to date with respect to VMS (now known as Alliance), both in *Mey I* and since this MDL proceeding was created.

9.      In the six years since Ms. Mey filed her lawsuit, the parties have thoroughly investigated and tested their respective claims. Before the MDL was created, the Plaintiffs conducted discovery, defeated Monitronics' motion for summary judgment, and affirmatively obtained partial summary judgment against Defendant Alliance, with the Court ruling that Alliance's consent defense was without legal or factual basis. Since the MDL was established in December 2013, the parties have briefed over 30 substantive motions, including multiple motions to dismiss. Plaintiffs propounded at least 15 sets of written discovery. Monitronics served requests for admission, requests for production, and interrogatories on all of the plaintiffs included in the Second Consolidated Amended Complaint, receiving written answers and documents in response. Plaintiffs took 23 depositions, including 11 in *Mey I* and 12 after the MDL was established. Monitronics deposed Plaintiffs' experts, Ms. Mey (twice), and Mr. Charvat. Monitronics produced hundreds of thousands of pages of documents, including company policies and procedures and email correspondence. Plaintiffs' counsel reviewed all of these documents, and used the documents to create a lengthy chronological factual summary. All of this work required many thousands of hours of attorney time.

10. Plaintiffs focused much of their discovery efforts on obtaining the calling data necessary to determine the scope and composition of the violations. To that end, Plaintiffs served 45 subpoenas on various nonparties. Both parties retained multiple experts to review and analyze the data produced by the parties and nonparties and exchanged detailed expert reports.

11. As a result of this extensive discovery, by the time the parties commenced settlement negotiations, they understood the strength and weaknesses of their claims and defenses and the extent of class-wide damages. The parties mediated with Bruce Friedman of JAMS on December 8 and 9, 2016, but the case did not resolve. Soon after the December mediation, this Court entered an order granting Defendants' UTC and Honeywell's motion for summary judgment, dismissing Plaintiffs' claims against them. The parties resumed litigation in earnest, taking multiple depositions and fully briefing Monitronics' motion for summary judgment on the issue of whether it could be held vicariously liable for calls placed by its Authorized Dealers.

12. This case posed many legal and financial challenges. The Court's decision to award summary judgment on vicarious liability to UTC and Honeywell was very concerning to Plaintiffs' counsel. Were the Court to adopt a narrow view of Monitronics' vicarious liability and grant summary judgment to Monitronics, the value of this case to class members would have dropped virtually to zero. Given the weak financial condition of the Defendant dealers who placed the telemarketing calls (highlighted by Alliance's recent bankruptcy), the only significant source of recovery for the class was Monitronics.  Monitronics likely could not withstand a judgment in the hundreds of millions of dollars.  Given the size of its potential liability, bankruptcy was a distinct possibility for Monitronics.

13.     This combination of risk and delay all served as an impetus to Plaintiffs' counsel to negotiate a reasonable settlement with Monitronics, to ensure that class members would receive some financial relief, and the fairness of the settlement can only be evaluated when considering that risk and delay.

14.     Throughout the settlement negotiations, all of which were free of collusion, at arms' length, and overseen by a respected and experienced mediator, Monitronics' insurance carriers insisted that various policy provisions barred insurance coverage. Plaintiffs scrutinized these policies as well as pleadings filed in two declaratory judgment actions that involved Monitronics and one of its carriers. Monitronics eventually agreed to pay $28,000,000, which Plaintiffs had demanded as part of a policy limits demand. Once that policy limits demand was conveyed, Plaintiffs refused to reduce the demand by a penny.

## Attorneys' Fees and Costs

15.     Plaintiffs' counsel have litigated this case for more than six years, without payment for fees or costs. Plaintiffs' counsel will file a fee petition with the Court requesting an attorneys' fee award of one-third of the Settlement Fund to compensate them for the work performed in the case and the risk they undertook taking this action on a contingent basis.

16.     Plaintiffs' Counsel will also seek reimbursement of up to $600,000 in out-of-pocket costs incurred in prosecuting this action for the last six years. This amount includes the over $170,000 Plaintiffs' counsel paid to store the voluminous data produced during discovery. It also includes over $250,000 in expert expenses for their work analyzing data, identifying class members, and determining the number of TCPA violations. The remaining amount includes general litigation expenses such as travel to depositions, transcript costs, and mediation

expenses. In connection with their fee petition, Plaintiffs' Counsel will provide the Court with an updated report regarding these expenses.

## Estimated payments to Class Members

17. Plaintiffs' experts have identified 7,858,232 telephone numbers to which allegedly unlawful calls were placed. Plaintiffs have obtained names and either email or physical addresses associated with 4,385,199 of these phone numbers. Despite Plaintiffs' efforts to investigate and compile information regarding all people who received calls promoting Monitronics' services, there are likely Settlement Class members who were not identified.

18. Assuming the Court grants the requested attorneys' fees and litigation expenses, Plaintiffs estimate that each Settlement Class member who submits a claim will receive $15–$25.

## Monitronics' Offers of Judgment

19. This settlement never would have been achieved had Monitronics succeeded in its strategy of offering judgment to class representatives in order to moot the representatives' claims, and thereby preclude class certification. The possibility of summary dismissal of this class was also tangible pending the Supreme Court's decisions in *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016) and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016)—and a decision against the Plaintiff in either case could have ended this litigation. The Supreme Court issued its opinions in both cases in 2016, but the legal landscape regarding offers of judgment and injury remained uncertain. *Fulton Dental, LLC v. Bisco, Inc.*, No. 15-11038, 2016 WL 4593825 (N.D. Ill. Sep. 2, 2016) (allowing deposit of funds and entering judgment for defendant); *Romero v. Dep't Stores Nat'l Bank*, 199 F. Supp. 3d 1256 (S.D. Cal. 2016) ("One singular call, viewed in isolation and without consideration of the purpose of the call, does not cause any injury that is traceable to the conduct for which the TCPA created a private right of action, namely the use of

an ATDS to call a cell phone."). A decision from this Court on either of those issues against the Plaintiff would have ended this litigation. Many Plaintiffs in the MDL accepted offers of judgment, as shown by the following chart.

| Name | Amount | Offeror |
|---|---|---|
| Edith Bowler | $9,018 | Monitronics<br>UTC |
| Vincent Brizgys | $1,503 | Alliance<br>Monitronics<br>UTC |
| Bill Garcia | $3,006 | UTC |
| James Giles | $18,036 | ISI Alarms<br>Monitronics |
| James Hough | $15,030 | Monitronics<br>Alliance<br>VMS<br>UTC |
| Kenneth Moser | $1,503 | Alliance<br>Fabiano<br>Gotra<br>Newcomer |
| Jonathan Mraunac | $4,509 | Alliance<br>Monitronics<br>UTC |
| Kerry O'Shea | $60,120 | Monitronics<br>Alliance<br>VMS<br>UTC |
| Nicholas Shreders | $3,006 | Alliance<br>Monitronics<br>UTC |

20.     Notably and as set forth in the chart below, Plaintiffs Mey, Charvat, Hodgins, Bennett, and Dolemba all rejected offers of judgment. Again, had they accepted, they would have profited personally, but the class would have received nothing.

| Name | Date of OOJ | Amount | Offeror |
|---|---|---|---|
| Diana Mey | June 1, 2015 | $50,000 | Honeywell<br>Monitronics<br>ISI<br>Klink<br>Waller |
| Diana Mey | May 29, 2015 | $120,240 | Monitronics<br>UTC<br>Alliance<br>VMS |
| Philip Charvat | June 1, 2015 | $50,000 | 40,000<br>UTC, Monitronics,<br>Alliance<br>VMS<br><br>10,000<br>Honeywell<br>Monitronics<br>ISI<br>Klink<br>Waller |
| Jason Bennett | May 29, 2015 | $6,012 | Monitronics |
| Scott Dolemba | June 1, 2015 | $1,503 | Alliance<br>Monitronics |
| Janet and Michael Hodgin | May 29, 2015 | $1,503 | Monitronics<br>UTC |

21. Additionally, the Plaintiffs assisted with the drafting of the complaint, provided information regarding their interactions with Monitronics, responded to written discovery, and were ready and willing to testify at trial. Ms. Mey (twice – on December 30, 2011 for almost six hours, and on April 24, 2017 for almost three) and Charvat (on April 25, 2017, four hours) were deposed; and depositions of the Hodgins, Mr. Dolemba, and Mr. Bennett had been scheduled at the time the parties reached settlement.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

EXECUTED at Charleston, West Virginia, this 31st day of August, 2017.

/s/ Jonathan R. Marshall
Jonathan R. Marshall
*Counsel for Plaintiffs*

- 10 -